## Gerald D. FOWLER, d/b/a OZARK HILLS REALTY *v.* ARKANSAS REAL ESTATE COMMISSION

75-24                                                    524 S.W. 2d 230

### Opinion delivered June 16, 1975

*Mart Vehik,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Bill D. Etter,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. The appellant Gerald D. Fowler, a real estate broker doing business as Ozark Hills Realty, brings this appeal from a judgment of the Pulaski County

Circuit Court sustaining an order of the Arkansas Real Estate Commission suspending the appellant's broker license for a period of six months because of unprofessional conduct, and misrepresentations, in violation of Ark. Stat. Ann. § 71-1307 (a), (c), (h) and (j) (Repl. 1957). The pertinent portions of the statute provide as follows:

> "The Commission may upon its own motion . . . suspend or revoke any license issued under the provisions of this Act [§§ 71-1301 — 71-1311]; at any time. . . the licensee in performing or attempting to perform any of the acts mentioned herein is deemed to be guilty of:
>
> (a) Making any substantial misrepresentation, or
>
> * * *
>
> (c) Pursuing a continued and flagrant course of misrepresentation or making of false promises through agents or salesmen or advertising or otherwise, or
>
> * * *
>
> (h) Being unworthy or incompetent to act as a real estate broker or salesman in such manner as to safeguard the interests of the public, or
>
> * * *
>
> (j) Any other conduct whether of the same or a different character from that hereinbefore specified which constitutes improper, fraudulent or dishonest dealing."

From the uncontradicted testimony, including that of the appellant, the facts appear as follows: In February, 1973, the appellant entered into a purchase contract with Mr. and Mrs. Farwell for the purchase of about 365 acres of land in Carroll County. He made a downpayment on the property and went into possession of it. He had about 100 acres of the land adjacent to the highway platted or surveyed off into five acre plots and designated this area as "Zion Hills' Acres." He formed a corporation as "Zion Hill Corporation." He

then began attempting to sell the plots and did sell one plot to a Mr. DeNegri for approximately $5,000 cash and attempted to transfer title by use of a "Bill of Sale" form designated for use in the transfer of title to personal property rather than by a deed form designated for the transfer of title to real property. After Mr. DeNegri consulted an attorney, the Farwells executed a warranty deed transferring title direct to DeNegri who obtained a quitclaim deed from the appellant. The bill of sale was witnessed on March 6, 1973, and the warranty deed was dated March 13, 1973.

The appellant passed examination for a realtor's license on January 9, 1973, and his license was issued on March 14, 1973. No improvements whatever were made on the land by the appellant but he began an advertising campaign through brochures mailed to prospective purchasers in other states. One such brochure was mailed to Victor I. Lypke on May 15, 1973, and it recited in part as follows:

"a distinctive new retirement and resort community —

ZION HILLS' ACRES
developed by - ZION HILL CORPORATION of Eureka Springs, Arkansas - Rt. #2 - Box 730  72632
ZION HILL CORPORATION is making available FIVE ACRE MINI-PLANTATIONS and MINI-RANCH HOMESITES for 'COUNTRY LIVING AT ITS' BEST'
—with improvements and services—

* * *

OZARK HILLS REALTY — offers through exclusive listings these FIVE ACRE MINI-PLANTATIONS and MINI-RANCH HOMESITES — Also only through Ozark Hills Realty we have any size location of Zion Hills' Acres, from ½ Acre lots (1 ½ acre-2 acre) to 5 Acre Mini-Plantations — Homesites CASH OR TERMS AVAILABLE * * *"

Mr. Victor I. Lypka was one of several persons who

responded to the appellant's advertisements and the appellant followed up with letters to Mr. Lypka. One such letter to Mr. Lypka was dated April 14, 1973, and read in part as follows:

"This is to acknowledge receipt of your note requesting information concerning Zion Hills' Acres. We are sure that you saw our ad in the Eureka Springs paper. The ad read, '½ acre in the beautiful Ozarks for $100.00 with water, electricity, and paved roads. UNBELIEVEABLE? But possible through and in an introductory investment plan. We will do just that by your investment in Zion Hills' Acres.' The second page of this letter will explain that investment plan in detail. This will give the person investing his money a 10% to 15% per year return in the form of a ½ acre lot in the beautiful Ozarks with utilities.

Zion Hills' Acres is a new development in the Ozarks, a short distance from Tablerock Lake, one of the nation's most popular lakes and top bass lake of the nation. Zion Hills' Acres is choice land for the person who likes country living at its best.

Zion Hill Corporation must limit this investment offer to the first 10 persons taking advantage of the offer."

An undated letter to Mr. Lypka read in part as follows:

"We have listed for sale a development in the Ozarks known as Zion Hills' Acres. This development known as Zion Hills' Acres is nestled in and surround[ed] by mountains on the nearby edge of Tablerock Lake. The development is along Arkansas state highway #23, just 8 miles north of Eureka Springs, Ark.

* * *

This development has been subdivided into 5 acre tracts and are now available for those looking for their location in the Ozarks. The developer, Zion Hill Corporation, is improving each tract of land by running water, electrici-

ty, and paved roads to each one. Telephone service is available to each tract.

Zion Hill Corporation has asked our sales firm to extend a special offer to the first 10 persons interested in purchasing a 5 acre tract. This offer is for a limited number in this way — by that person purchasing a 5 acre tract on an investment opportunity for cash and then letting our real estate firm subdivide your 5 acre tract into smaller lots, leaving you a ½ acre lot to keep for your own. As we sell your lots, we will pay to you all of the money that you have paid for the whole 5 acres except $100.00. If you choose, you may keep the whole 5 acres. We will sign a contract with you on this plan.

What does this mean for you — it means that you can get a ½ acre lot in the Ozarks with water, electricity and paved roads for only $100.00 cost. We will sign a contract with you to resell your lots and pay back your total cost-less $100.00 that you paid for your 5 acre tract. All that we ask is that you simply take advantage of this offer by contacting us and looking into it further. What you will gain is a ½ acre lot in the beautiful Ozarks, valued at $2,500 and up with utilities for only $100.00 by investing in Zion Hills' Acres. You have this oportunity by contacting us immediately."

Under date of July 20, 1973, the appellant caused to be published in the Carroll County Tribune an advertisement reading in part as follows:

"Farms        Ranches
Businesses
Lake Properties
Plus

a distinctive new retirement and resort community—

ZION HILL CORPORATION is making available five acre MINI-PLANTATIONS and MINI-RANCH HOMESITES for 'COUNTRY LIVING AT ITS' BEST' — with improvements and services—

PAVED ROADS — PRIVATELY OWNED WATER WELLS — ELECTRICITY — TELEPHONE SERVICE — L. P. GAS — RECREATIONAL AREA — SENSIBLE AND PROTECTIVE RESTRICTIONS

OZARK HILLS REALTY"

On appeal to this court the appellant relies on the following points for reversal:

"A. The Circuit Court of Pulaski County erred in finding the Arkansas Real Estate Commission's actions against Appellant were not in violation of Arkansas Statutory provisions and procedures relating to the activities of real estate brokers. Appellant did not receive proper notice of the charges brought against him.

B. The Circuit Court of Pulaski County erred in upholding the Arkansas Real Estate Commission's findings of fact and conclusions of law, as said findings and conclusions did not meet the requirements of Section 5-710 (b), Arkansas Statutes.

C. The Circuit Court of Pulaski County, Arkansas erred in finding that there was substantial evidence of record to support the decision of the Arkansas Real Estate Commission and that said decision did not constitute an attempt to discriminate against Appellant."

In support of his first assignment the appellant argues that he did not receive proper notice of the charges brought against him by the Arkansas Real Estate Commission as required by two sections of the Administrative Procedure Act, Ark. Stat. Ann. §§ 5-708 and 5-712 (Supp. 1973), the pertinent provisions of which are as follows:

"§ 5-708. Administrative adjudication. — In every case of adjudication:

(a) All parties shall be afforded an opportunity for hearing after reasonable notice.

(b) The notice shall include:

(1) A statement of the time, place, and nature of the hearing;

(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;

(3) A short and plain statement of the matters of fact and law asserted.

§ 5-712. Licenses. — (c) No revocation, suspension, annulment, or withdrawal of any license is lawful unless, prior to the institution of agency proceedings, the agency gave notice by mail to the licensee of facts or conduct warranting the intended action, and the licensee was given an opportunity to show compliance with all lawful requirements for the retention of the license. . . ."

The crux of appellant's argument is that the appellee-Commission's order and notice of hearing charged him with engaging in certain real estate broker's activities before he had a valid Arkansas license, but that he was found to have violated § 71-1307 (a), (c), (h) and (j), *supra,* a statute which prohibits certain conduct by holders of Arkansas real estate broker licenses. Therefore, the appellant argues, the order and notice did not provide him with the true basis of the proceedings against him, which he needed to adequately defend himself. The order and notice of hearing is set out in appellant's brief as follows:

"The Arkansas Real Estate Commission, on its own motion, has determined that there is sufficient evidence to charge Gerald D. Fowler d/b/a Ozark Hills Realty, a licensed real estate broker in the State of Arkansas, with violation of the following sections of the Real Estate Licensing Law and Commission regulations: Ark. Stat. Ann. §§ 71-1301, 71-1307 (a), (b), (c), (d), (e), (h), (j) and Regulations Nos. 39, 41, 42, and 43. These charges are based upon the following facts and allegations:

1. By an instrument entitled 'Bill of Sale' and dated

March 6, 1973, Gerald D. Fowler and Peggy Sue Fowler purported to sell certain real estate in Carroll County, Arkansas, to Albert DeNegri. Said instrument by its specific language is intended to convey only 'personal property' and is incapable of conveying interest in realty.

2. Although Gerald D. Fowler represented to Albert DeNegri that the realty sought to be conveyed by the Bill of Sale was owned by Gerald D. Fowler and Peggy Sue Fowler, the realty was in fact owned by Ola Farwell and Maye Farwell.

3. In advertising property known as 'Zion Hills' Acres,' Gerald D. Fowler utilized 'blind ads.' He represented that prospective purchasers could buy a ½ acre lot for $100.00 without revealing the prerequisite of a $10,-000.00 investment.

4. Gerald D. Fowler performed the foregoing acts, and others, before he held a valid Arkansas license as a real estate broker.

The Arkansas Real Estate Commission has determined that it should conduct a hearing to determine whether the real estate broker's license issued to Gerald D. Fowler d/b/a Ozark Hills Realty should be revoked or suspended.

Under and pursuant to the provisions of Act 434 of Acts of Arkansas of 1967 and Ark. Stat. Ann. § 71-1308, notice is hereby given that a formal hearing regarding the charges and allegations set out herein will be held in the office of the Commission, 1311 West Second Street, Little Rock, Arkansas, at 11:00 a.m., on Monday, July 9, 1973. Gerald D. Fowler may be heard in person or by counsel and may offer such witnesses, affidavits, documentary evidence and/or depositions in defense of the above charges as he may reasonably desire.

ORDER AND NOTICE OF HEARING (AMENDED)

Paragraph 3 is amended as follows:

3. In advertising property known as 'Zion Hills' Acres,' Gerald D. Fowler utilized 'blind ads.' He represented that prospective purchasers could buy a ½ acre lot for $100.00 without revealing the prerequisite of a $10,-000.00 investment. Said advertisements also falsely represented 'Zion Hills' Acres' had the following improvements and services: paved roads, privately owned water wells, electricity, telephone service, recreational area.

A formal hearing regarding the charges and allegations set out herein will be held . . . at 3:30 p.m. on Monday, September 10, 1973.''

We find no merit in the appellant's contention. The first paragraph of the order and notice set out the statutes appellant was accused of violating and § 71-1307, *supra*, was included. The rest of the order set out the transactions in which the violation allegedly occurred. Furthermore, the appellant's testimony and the exhibits which he submitted at the hearing indicate that he was prepared to answer the charges against him. In *NLRB* v. *Mackay Radio & T. Co.*, 304 U. S. 333 (1937), the United States Supreme Court was confronted with a similar situation in which an employer was found guilty of an unfair labor practice which it contended was not within the issues of the violation charged. The charge alleged that the employer discriminated against five men by its refusal to rehire them, but the employer was found guilty of discrimination in discharging the men. In that case the court said:

"While the respondent was entitled to know the basis of the complaint against it, and to explain its conduct, in an effort to meet that complaint, we find from the record that it understood the issue and was afforded full opportunity to justify the action of its officers as innocent rather than discriminatory.''

The appellant next argues that the Real Estate Commission's findings of fact and conclusions of law were im-

properly stated under the Administrative Procedure Act because they were neither expressed in statutory language or accompanied by a statement of facts supporting the findings. As a result, the appellant argues, a reviewing court has no way of knowing what specific facts the Commission relied upon in ordering the suspension of appellant's license and therefore, cannot properly find whether the Commission's conclusions were based upon substantial evidence. Appellant cites *Ark. Sav. & L. Ass'n Bd.* v. *Central Ark. Sav. & L. Ass'n,* 256 Ark. 846, 510 S.W. 2d 872 (1974), and *First State Bldg. & L. Ass'n* v. *Ark. S. & L. Bd.,* 257 Ark. 599, 518 S.W. 2d 507 (1975), in support of this argument. In the first place Ark. Stat. Ann. § 5-710 (b) (Supp. 1973) does not require findings of fact to be couched in statutory language as appellant contends. The statute, as already pointed out, says:

> "In every case of adjudication, a final decision or order shall be in writing or stated in the record. A final decision shall include findings of fact and conclusions of law, separately stated. Findings of fact, *if* set forth in statutory language, shall be accompanied by a concise and explicit statement of the underlying facts supporting the findings. . ." (Emphasis added).

The two cases relied on by the appellant turned on the failure of the administrative agency to set out the underlying facts. In *First State Bldg. & L. Ass'n v. Ark. S. & L. Bd., supra,* and the recent case of *First Fed S. & L. Assoc.* v. *Ark. S. & L. Assoc. Bd.,* 257 Ark. 985, 521 S.W. 2d 542 (1975), we found the administrative agency decisions in violation of § 5-710 (b) because the findings of fact only paraphrased statutory language and did not state the underlying facts. The Real Estate Commission did set out its findings of fact in the case at bar and certainly the record supports its findings.

As to his third assignment of error, the appellant first contends that the Real Estate Commission's decision cannot be supported because the statute under which it was reached, § 71-1307, only applies to activities of real estate licensees, and that at the time of the alleged wrongful acts the appellant was not so licensed. It is true that the unprofessional behavior alleged in the transaction with Albert DeNegri occurred

before the appellant actually *received* his license on March 14, 1973. But even if the appellant were correct in his contention as to that transaction, the alleged acts in misrepresenting the price, services and improvement on the property clearly occurred after the license was issued to the appellant.

The appellant testified that he used the bill of sale form in the DeNegri transaction simply because he did not have an "Offer and Acceptance" form. He readily admitted there were no streets, water wells or utility lines on the property. He said utility lines ran along the highway adjacent to the property and that he intended to be personally responsible for building streets and drilling wells if, when, and as he sold the plots. He first testified that he had entered into a contract for the construction of streets but then admitted that he had not.

In support of his contention that there was no substantial evidence to support the findings and decision of the Commission, the appellant argues that there were two possible interpretations of the advertisements concerning services to and improvements on the property. One, that they were presently installed and available, and two, that they would be installed and made available in the future. The advertisements and letters, *supra,* on their face certainly would lead one to believe that service facilities and improvements therein set out, were already in place and ready for use.

The judgment is affirmed.